Yvonne **BLACKWELL**, Plaintiff,

v.

**53RD–ELLIS CURRENCY EXCHANGE and Sidney R. Miller, Defendants.**

**No. 92 C 8310.**

United States District Court, N.D. Illinois, Eastern Division.

May 9, 1994.

Maureen Evelyn Terjak, Legal Assistance Foundation of Chicago and Timothy Huizenga, Legal Assistance Foundation, Chicago, IL, for plaintiff.

David A. Novoselsky and Kevin S. Besetzny, David A. Novoselsky & Associates, Chicago, IL, for defendants.

**1.** The other employees at 53rd–Ellis were Deborah Garrett, the Manager, and cashiers Doris J.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

This matter is before us on Plaintiff's motion for partial summary judgment. Plaintiff's complaint against Defendants 53rd–Ellis Currency Exchange, Inc. and Sidney R. Miller alleges violations of the Employee Polygraph Protection Act of 1988, 29 U.S.C. § 2001 *et seq.* For the reasons discussed below, Plaintiff's motion is granted.

### Background

The following facts are undisputed unless otherwise noted. Plaintiff Yvonne Blackwell ("Blackwell") is a Chicago resident who was employed by 53rd–Ellis Currency Exchange, Inc. as a cashier from approximately October 15, 1990, until she was fired on April 4, 1991. Defendant 53rd–Ellis Currency Exchange ("53rd–Ellis") is an Illinois corporation with its principal place of business at 1001 East 53rd Street in Chicago, Illinois. Defendant Sidney R. Miller ("Miller") is the principal owner and president of 53rd–Ellis. Miller acted in his capacity as president in all of his dealings with Plaintiff.

During the course of Plaintiff's employment, around February 1991, a notary seal was discovered missing from 53rd–Ellis. In approximately mid-March, Miller made a general statement to all of the employees [1] that each would be required to take a polygraph test ("test") in conjunction with certain missing notary seals and cash shortages. (Blackwell Dep. at 51.)

Plaintiff received written notice about taking the test on March 20, 1991, when she signed a one page statement acknowledging that she and the other employees were requested to submit to the test. According to Plaintiff, the statement was signed "maybe a day or two" after Miller made the general announcement about the test. (Blackwell Dep. at 55.)

Plaintiff took a polygraph test on March 21, 1991. Lee McCord ("McCord"), a polygraph examiner, administered the test and

Simms, Lavetta Smith, and Connie Woodall.

verbally informed Plaintiff immediately after the test that she had passed. Miller also informed Plaintiff that she had passed when she arrived at work later that same afternoon.

Plaintiff's employment with 53rd–Ellis was terminated on April 4, 1991. When she arrived at work that morning, Plaintiff was informed by the manager, Deborah Garrett ("Garrett"), that Miller had fired her. Plaintiff telephoned Miller that morning to inquire about her termination but hung up on Miller before he gave her a reason for the termination. According to Miller's deposition testimony, Plaintiff was fired because she cashed several forged checks; misrepresented the verification of a thirteen hundred dollar cashier's check to Miller; failed to perform tasks requested of her by Garrett; and acted uncivilly toward Miller by being "sassy to [him] a couple of times when [he] asked her to do something." (Miller Dep. at 54–56; 59.)

Plaintiff's complaint against Defendants alleges substantive and procedural violations of the Employee Polygraph Protection Act of 1988 ("EPPA"), 29 U.S.C. § 2001 *et seq.* We have jurisdiction pursuant to 29 U.S.C. § 2005(c)(2). Plaintiff moves for partial summary judgment based on Defendants' alleged (1) failure to meet the requirements of the exemption for ongoing investigations pursuant to 29 U.S.C. § 2006(d)(2) in that Defendants did not have a reasonable suspicion of Plaintiff's involvement in the two missing notary seals or cash shortages at 53rd–Ellis; (2) failure to provide Plaintiff with the statement required by 29 U.S.C. § 2006(d)(4); (3) failure to comply with 29 U.S.C. § 2007(b)(2)(A) and (E) and 29 C.F.R. § 801.22(c)(1)(i)(A) by not giving Plaintiff written notice of her rights as an examinee at least forty-eight hours before the test and a written list of questions that would be asked of her during the test; and (4) failure to comply with 29 U.S.C. § 2007(b)(5) by administering a polygraph test that lasted less than ninety minutes.

Pursuant to 29 U.S.C. § 2005, Plaintiff seeks reinstatement to her former position of employment at 53rd–Ellis, actual and punitive damages in amounts to be determined at trial, the costs of this action, and reasonable attorneys' fees. Plaintiff seeks summary judgment solely on the issue of liability.

### Summary Judgment Standard

At this point in the litigation, we do not weigh evidence or determine the truth of asserted matters but simply determine "whether a proper jury question [is] presented." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We view all evidence in the light most favorable to the party opposing the motion for summary judgment. *Bowyer v. U.S. Dep't of Air Force,* 804 F.2d 428, 430 (7th Cir.1986). However, if that party bears the burden of proof at trial on a dispositive issue, that party is required "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(e)). Ultimately, if alternate inferences can be drawn from the available evidence, summary judgment is inappropriate. *LHLC Corp. v. Cluett Peabody & Co.,* 842 F.2d 928, 935–36 (7th Cir.1988).

However, the non-moving party must do more than "simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1358, 89 L.Ed.2d 538 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2510. Whether or not a disputed fact is material depends solely on the applicable substantive law. *Id.* at 248, 106 S.Ct. at 2510.

### The Employee Polygraph Protection Act of 1988

The EPPA generally prohibits most private employers' use of polygraph tests either for pre-employment screening or for random

testing during the course of employment. *See* 29 U.S.C. § 2002; 29 C.F.R. § 801.1. Section § 2006 spells out six exemptions from the general prohibition on administering polygraph tests. The exemption at issue here is the fourth one, namely, the "Limited exemption for ongoing investigations." 29 U.S.C. § 2006(d). Specifically, subsection (d) of section 2006 states:

Subject to sections 2007 and 2009 [2] of this title, this chapter shall not prohibit an employer from requesting an employee to submit to a polygraph test if—

(1) the test is administered in connection with an ongoing investigation involving economic loss or injury to the employer's business, such as theft, embezzlement, misappropriation, or an act of unlawful industrial espionage or sabotage;

(2) the employee had access to the property that is the subject of the investigation;

(3) the employer has a reasonable suspicion that the employee was involved in the incident or activity under investigation; and

(4) the employer executes a statement, provided to the examinee before the test, that—

(A) sets forth with particularity the specific incident or activity being investigated and the basis for testing particular employees,

(B) is signed by a person (other than a polygraph examiner) authorized to legally bind the employer,

(C) is retained by the employer for at least 3 years, and

(D) contains at a minimum—

(i) an identification of the specific economic loss or injury to the business of the employer,

(ii) a statement indicating that the employee had access to the property that is the subject of the investigation, and

(iii) a statement describing the basis of the employer's reasonable suspicion that the employee was involved in the incident or activity under investigation.

29 U.S.C. § 2006(d).

Section 2007 further restricts use of the exemptions. Subsection 2007(a) provides:

Except as provided in paragraph (2), the exemption under subsection (d) of section 2006 of this title shall not apply if an employee is discharged, disciplined, denied employment or promotion, or otherwise discriminated against in any manner on the basis of the analysis of a polygraph test chart or the refusal to take a polygraph test, without additional supporting evidence. The evidence required by such subsection may serve as additional supporting evidence.

29 U.S.C. § 2007(a). Subsection 2007(b) sets out an examinee's rights both pre-test and during all phases of the process. 29 U.S.C. § 2007(b).

Thus, a private employer is entitled under this exception to administer a polygraph test if (1) the test is given in connection with an "ongoing investigation" involving economic loss, such as theft, to the employer's business; (2) the employee had "access" to the property in question; (3) the employer has a "reasonable suspicion" that the employee was involved in the incident under investigation; (4) the employer signs a statement containing the required information and provides it to the employee prior to testing; and (5) the limitations set forth in section 2007 are met. An employer is liable under the EPPA if the employer administers a polygraph test without meeting each one of the requirements set out in the statute. 29 U.S.C. § 2005. Because Plaintiff admits that the first two requirements are met, Plaintiff is entitled to summary judgment only if there is no genuine issue of fact with regard to Defendant's failure to meet at least one of the latter three requirements.

### *Discussion*

■ Plaintiff first argues that the dictates of section 2006(3) have not been met because Defendants did not have a "reasonable suspicion" that Plaintiff was involved in the inci-

**2.** Section 2009 describes the effect of the EPPA on other laws and agreements.

dent or activity under investigation. Plaintiff asserts that Defendants lacked the requisite reasonable suspicion about *her* involvement in the incidents because *all* employees were asked to submit to the test, other employees had access to the missing items, and no specific allegations have been made that Plaintiff more than any other employee was involved in the disappearance of the missing items. (Pl.'s Mem.Supp.Mot.Sum.J. at 5–6.) Defendant's response seems to be that all employees were requested to take the test because all employees had access to the missing items. (Defs.' Mem.Opp.Mot.Sum.J. at 3.)[3] Whether Plaintiff can prevail on this issue turns on the interpretation of "reasonable suspicion."

The EPPA does not define the term "reasonable suspicion."[4] The statute merely states that an employer may request an employee to submit to a polygraph test if, *inter alia*, "the employer has a reasonable suspicion that the employee was involved in the incident or activity under investigation." 29 U.S.C. § 2006(3). Thus, we look to the legislative history of the Act and the interpretive regulations promulgated by the Department of Labor for guidance on the term's intended meaning.

According to the legislative history, Congress intended "reasonable suspicion" to refer to

some observable articulable basis in fact *beyond the predicate loss and access required for testing.* This could include such

factors as the demeanor of the employee or discrepancies which arise during the course of an investigation. And while access alone does not constitute a basis for reasonable suspicion, the totality of the circumstances surrounding such access, such as its unauthorized or unusual nature, may constitute an additional factor.

H.R.Conf.Rep. No. 659, 100th Cong., 2d Sess. 12–13, *reprinted in* 1988 U.S.C.C.A.N. 751 (emphasis added).[5]

The regulations promulgated by the Department of Labor provide further insight into the term's meaning. Regulation 801.-12(f)(1) mirrors the language found in the legislative history that reasonable suspicion refers to an "observable, articulable basis in fact which indicates that a particular employee was involved in, or responsible for, an economic loss." 29 C.F.R. § 801.12(f)(1). The regulation further emphasizes that "[a]ccess in the sense of possible or potential opportunity, standing alone, does not constitute a basis for 'reasonable suspicion.'"[6] *Id.*

The regulations illustrate the limited circumstances in which reasonable suspicion may be predicated on access alone.

[I]n an investigation of a theft of an expensive piece of jewelry, an employee authorized to open the establishment's safe no earlier than 9 a.m., in order to place the jewelry in a window display case, is observed opening the safe at 7:30 a.m. In such a situation, the opening of the safe by the employee one and one-half hours prior

---

**3.** According to Defendants, "all of 53rd–Ellis' employees knew of the polygraph tests and the reasons same were requested well in advance of March 29 (sic) 1991 as part of 53rd–Ellis' ongoing investigation for the missing items. Thus, 53rd–Ellis has a reasonable suspicion to request Ms. Blackwell to take a polygraph examination. All employees had access, all employees were requested to take polygraph examinations." (Defs.' Mem.Opp.Mot.Sum.J. at 3.).

**4.** One commentator notes that because the meaning of "reasonable suspicion" is often context-specific, this issue may " 'be the most complex issue posed by, and ultimately litigated under the Act.' " Charles P. Cullen, The Specific Incident Exemption of the Employee Polygraph Protection Act: Deceptively Straightforward, 65 NOTRE DAME L.REV. 262, 281 (1990) (hereinafter "Cullen") (quoting Fitzpatrick, Polygraph

Testing of Employees in Private Industry: A Legal Overview, 35 FED.BAR NEWS & J. 132, 133 (1988)).

**5.** The standards for reasonable suspicion in the EPPA were not intended by Congress to be as stringent as those afforded criminal subjects in certain fourth amendment search and seizure situations. *See* S.Rep. No. 284, 100th Cong., 2d Sess. 41, 48–49, *reprinted in* 1988 U.S.C.C.A.N. 726.

**6.** 29 C.F.R. § 801.12(f)(1) further states that "[i]nformation from a co-worker, or an employee's behavior, demeanor, or conduct may be factors in the basis for reasonable suspicion. Likewise, inconsistencies between facts, claims, or statements that surface during an investigation can serve as a sufficient basis for reasonable suspicion." *Id.*

to the specified time may serve as the basis for reasonable suspicion. On the other hand, in the example given, if the employer asked the employee to bring the piece of jewelry to his or her office at 7:30 a.m., and the employee then opened the safe and reported the jewelry missing, *such access, standing alone, would not constitute a basis for reasonable suspicion that the employee was involved in the incident unless access to the safe was limited solely to the employee. If no one other than the employee possessed the combination to the safe, and all other possible explanations for the loss are ruled out, such as a break-in, the employer may formulate a basis for reasonable suspicion based on sole access by one employee.* 29 C.F.R. § 801.12(f)(2) (emphasis added). The employer has the burden of establishing that the specific individual to be tested is "'reasonably suspected' of involvement in the specific economic loss or injury for the requirement in section [200]7(d)(3) to be met." 29 C.F.R. § 801.12(f)(3).

Defendants have failed to establish that there is a genuine issue regarding the requisite "reasonable suspicion" that Plaintiff was involved in the missing notary seals and/or the cash shortages at 53rd–Ellis. Miller's deposition testimony and Defendant's entire argument indicate that reasonable suspicion was premised solely upon the fact that Plaintiff had access to the missing notary seals and to the cash. (*See* Miller Dep. at 28–35; Defs.' Mem.Opp.Mot.Sum.J. at 3.) Defendants do not—and could not consistent with the uncontested facts—argue that Plaintiff had *sole access.*

The fact that Plaintiff had access to the missing items is not enough. The legislative history of the EPPA and the Department of Labor's regulations state in no uncertain terms that mere access is not enough to establish the reasonable suspicion required under 29 U.S.C. § 2006(d)(3). Because all Defendants offer is Plaintiff's access, and because mere access to stolen items is as a matter of law an insufficient foundation for reasonable suspicion under the EPPA, Defendants have not met their burden under Rule 56 to "designate specific facts" that show that there is a genuine issue of fact.[7] We "need not scour the record" to find such an issue if Defendants fail to do so. *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.,* 9 F.3d 561, 567 (7th Cir.1993).

Plaintiff is entitled to summary judgment on the issue of liability. The EPPA exemption for on-going investigations into economic loss or injury to business is only available if the employer fulfills every one of the requirements set forth in section 2006. Defendants have not shown that there is a genuine issue for trial on the issue of reasonable suspicion. Hence, Defendants cannot, as a matter of law, prevail on the liability issue.

■ Plaintiff also is entitled to summary judgment based on the insufficiency of the statement given her by Defendant 53rd–Ellis prior to administration of the polygraph test. Section 2006(d)(4) provides that an employer is required to sign a statement given to the employee prior to the test which "sets forth with particularity the specific incident ... being investigated and the basis for testing particular employees," and contains "an identification of the specific economic loss ... to the business of the employer," a statement that the employee had access to the property in question, and a statement describing the basis for the employer's "reasonable suspicion" that the employee was involved in the theft. 29 U.S.C. § 2006(d). Regulation 801.-12(g)(2) requires that the statement "be re-

---

7. Defendant's argument that Plaintiff's termination was not connected or related to the polygraph examination and the results thereof is irrelevant and does not create a genuine issue of material fact. It is undisputed that Plaintiff passed the polygraph test. Plaintiff's complaint is based upon the fact that Defendant was not entitled to administer the test to Plaintiff at all. Moreover, we reject Defendant's argument that Plaintiff's appearance and voluntary participation in the polygraph examination indicates a waiver of any of her rights under the EPPA. Section 2005(d) unequivocally states that the rights and procedures under the EPPA "may not be waived by contract or otherwise, unless such waiver is part of a settlement agreed to and signed by the parties to the pending action or complaint under this chapter." 29 U.S.C. § 2005(d). It would thus seem that even an employee who wanted to take a polygraph test in order to exonerate herself would not be able to waive the Act's requirements.

ceived by the employee at least 48 hours" prior to the time of the examination. 29 C.F.R. § 801.12(g)(2).

There is no evidence even suggesting that these requirements might have been met. The only notice provided by Defendants to Plaintiff prior to her submission to the test is a statement that she and the other employees were requested to submit to the test. The hand-written statement dated March 20 reads:

> This statement confirms that the undersigned employees of 53rd–Ellis Currency Exchange, Inc. were notified that a polygraph examination was requested in connection with shortages in March, 1991, and the disappearance of two notary seals.

(Pl.'s Mot.Partial Summ.J., Exh. 1)

Defendants admit that the statement does not set forth all of the information required under 29 U.S.C. § 2006(d)(4). Paragraph 11 of Defendant's 12(N) statement states:

> While Defendants agree that Ms. Blackwell never received a statement indicating that she had access to the property that was the subject of the investigation or described the basis of the employer's reasonable suspicion that she was involved in the incident under investigation, Ms. Blackwell admitted in her deposition that she, did have access to the property, like everyone else who worked at 53rd–Ellis, and that all employees signed the posted notice on March 20, 1991 regarding the polygraph examinations.

(Def.Resp. to Pl.'s 12(M) Stmt., ¶ 11.) Defendants further admit that written notice was given *24 hours* in advance rather than the requisite forty-eight. (Def.Mem.Opp. to Pl.'s Mot.Sum.J. at 3.)

There is no dispute about Defendants' failure to furnish Plaintiff with a statement meeting the requirements of subsection 2006(d)(4). The fact that Plaintiff admitted that she had access to the missing items does not cure the deficiency. The statement itself must include the fact of Plaintiff's access and the basis for the employer's reasonable suspi-

cion. Accordingly, Plaintiff is entitled to summary judgment on this basis as well.[8]

### *Conclusion*

Defendants have failed to raise a genuine issue of material fact regarding their compliance with either subsection 2006(d)(3) or subsection 2006(d)(4). Plaintiff's motion for partial summary judgment on the issue of liability is therefore granted.

---

8. Because we conclude that Defendants did not qualify for the limited exemption for ongoing investigations and therefor were not entitled to administer the polygraph test, we do not reach Plaintiff's remaining arguments relating to pretest violations of the EPPA and the sufficiency of the duration of the test.